Jeffrey I. Carton (JC-8296)
Joanna Sandolo (JS-9187)
DENLEA & CARTON LLP
One North Broadway, 5th Floor
White Plains, NY 10601
(914) 920-7400
*Attorneys for Plaintiff United States
Tennis Association Incorporated*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES TENNIS ASSOCIATION
INCORPORATED,

                          Plaintiff,

    -against-

VSW PRODUCTIONS LLC, M & M FILMS, INC.,
MAIKEN BAIRD and MICHELLE MAJOR,

                          Defendants.
----------------------------------------------------------------X

13 CV 4124

JUDGE RAMOS
Civil Action No.

**COMPLAINT**

Plaintiff, the United States Tennis Association Incorporated ("USTA"), by and through its undersigned attorneys, as and for its Complaint against defendants VSW Productions LLC, M & M Films, Inc., Maiken Baird and Michelle Major (together, "Defendants"), alleges as follows:

**NATURE OF THE ACTION**

1.     This action seeks to redress Defendants Michelle Major's ("Major") and Maiken Baird's ("Baird") (and their production companies M & M Films' and VSW Productions') bad faith, brazen betrayal of their promises to the USTA and unlawful misappropriation of one of the USTA's most valuable assets: recorded video footage

captured during the US Open Tennis Championships, one of professional tennis' Grand Slam Events.

2.  In 2011, Defendants approached the USTA in connection with their production of a motion picture film entitled *Venus and Serena* (the "Film"), seeking permission to include US Open footage in the Film. Specifically, Defendants sought permission to include historical footage of the Williams' sisters from previous US Opens, as well as permission to obtain new footage of the sisters in connection with the yet to be played 2011 US Open. In connection with this request, and in furtherance of the USTA's stated mission to help promote and develop the growth of tennis, the USTA granted Defendants restricted access to the grounds of the USTA Billie Jean King National Tennis Center to, *inter alia*, record limited footage of the Williams' sisters, in contemplation of Defendants entering into the USTA's standard footage license agreement and paying the USTA its standard licensing fees for such footage. Despite being allowed access to the 2011 US Open to record the footage they requested, Defendants never paid the USTA nor did they consummate a written license agreement with the USTA, leaving the USTA to believe that the project had been abandoned or would be completed without inclusion of any US Open footage.

3.  The USTA was therefore stunned to discover that – despite Defendants' failure to enter into a footage license agreement and pay the requisite licensing fees – Defendants did, in fact, complete and distribute the Film, and included over twenty minutes of unlicensed US Open footage within it. Having failed to reach an agreement with the USTA, or otherwise pay for the footage they used, Defendants simply misappropriated the US Open footage (including footage for which the USTA enjoys

2

copyright protection) for their commercial advantage without regard to the USTA's rights. Much to the USTA's dismay, the Film has been, and continues to be, commercially exploited through film festivals, movie theaters, and cable distribution, in willful violation of the USTA's copyright (and other) rights.

4.     By this action, the USTA seeks to permanently bar Defendants from infringing upon its copyrights and to recover the significant financial consideration to which it is due for Defendants' unlawful misappropriation of the USTA's rights.

## PARTIES

5.     USTA is a New York not-for-profit corporation, with its principal place of business at 70 West Red Oak Lane, White Plains, New York 10604. USTA is the national governing body for the sport of tennis and the recognized leader in promoting and developing the sport's growth on every level in the United States, from local communities to the crown jewel of the professional game, the US Open Tennis Championships (the "US Open").

6.     Upon information and belief, defendant VSW Productions LLC ("VSW") is a New York Corporation with its principal place of business in New York City, and is currently doing business as "M & M Films."

7.     Upon information and belief, defendant M & M Films, Inc. ("M & M") is a New York Corporation with its principal place of business in New York City.

8.     Upon information and belief, defendant Baird is a principal of VSW and/or M & M and a producer/director of the Film. At all times relevant to this dispute, Baird resided in New York, New York.

9.     Upon information and belief, defendant Major is a principal of VSW and/or

M & M and a producer/director of the Film. At all times relevant to this dispute, Major resided in Brooklyn, New York.

## JURISDICTION AND VENUE

10. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq.*

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (copyright) and 28 U.S.C. § 1367 (supplemental jurisdiction over USTA's state law claims).

12. This Court has personal jurisdiction over Defendants, and venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a), in that a number of the Defendants reside in this District and a substantial part of the events giving rise to the USTA's claims occurred in this District.

## FACTS

### History of the USTA

13. Established in 1881, the USTA is a progressive and diverse not-for-profit organization dedicated to developing and promoting the sport of tennis on every level in the United States, from youth tennis to professional tournaments.

14. Since its inception, the USTA has grown into the largest tennis organization in the world, with over 770,000 individual members, and serves as the national governing body of the sport of tennis in the United States. The USTA distributes millions of dollars annually to community based organizations across the country through the distribution of grants to non-profit entities committed to increasing

tennis participation, diversity, developing educational programming and helping children pursue their goals through leading healthier lives. The USTA's brand and trademarks are universally recognized and synonymous with excellence in the sports and entertainment industries.

15.  The USTA believes that the key to the success of its mission to promote tennis worldwide is its ability to introduce tennis to the widest possible audience and, above and beyond encouraging play, to provide spectators – both on site and at home – with an exciting tennis experience.

16.  Vital to the USTA's continued success is its marquee event, the US Open. This two-week event, held annually in the late summer at the USTA Billie Jean King National Tennis Center in Flushing, Queens (the "NTC"), is the crown jewel of professional tennis.

17.  With over 700,000 spectators annually, the US Open is the largest annually-attended sporting event in the world and attracts the biggest names in tennis to compete. Revenues from the US Open are the primary source of funding utilized by the USTA to help promote and develop the growth of tennis at all levels in the United States.

18.  Given the event's worldwide prestige, the broadcasting rights for the US Open are among the most valuable assets of the USTA. Pursuant to a series of complex and highly-negotiated contracts, the USTA grants exclusive broadcast rights for the US Open to its broadcast partners both domestically and internationally. The rights fees garnered by these broadcast agreements are significant and critical to the USTA's mission.

19.     Additionally, the USTA maintains a vast library of archival US Open footage, including footage of on-court match play, awards presentations, press conferences, player interviews, as well as "B Roll" footage of the stands and grounds of the NTC during the US Open.

20.     Licenses for the use of this archival US Open footage are another significant source of revenue for the USTA.  Thus, the USTA carefully manages this asset and employs strict policies with regard to its licensing, which policies are dictated by, among other things, the USTA's obligations to its broadcast partners, licensing agent, and internal considerations.

**M & M's Request For A License**

21.     In 2011, Defendants entered into a commercial venture to produce a motion picture film concerning the lives and careers of American superstar tennis players Venus and Serena Williams.  It was represented to the USTA by Defendants that their Film was to focus on the Williams' sisters' compelling personal histories and unprecedented success in professional tennis.  Thus, the Film was to feature both archival footage and photographs of the sisters throughout their careers, as well as behind-the-scenes footage of the sisters captured by Defendants' production crew as they followed the Williams sisters throughout 2011.

22.     Not surprisingly, Defendants wished to include in their Film footage from the US Open, the pinnacle of professional tennis and a tournament which each of the sisters has won multiple times. Accordingly, in or about July 2011, Major, on behalf of M & M, approached the USTA seeking to acquire footage of the 2011 US Open for use in the Film.  Major wrote:

6

> ... We have already filmed at the Australian Open, The Aegon International, and Wimbledon this year and are hoping that you will help us acquire accreditation for our small film crew of 3 or 4 plus 2 producers to film at the US Open....***We are entirely willing to agree to film only where and what your organization will allow.*** Please let me know how we should proceed.

(Emphasis added.)

23. Shortly thereafter, the USTA expressed its willingness to work with M & M with regard to the Film, subject to the USTA's standard licensing policies. Specifically, the USTA advised M & M that, with regard to the footage Defendants sought to capture at the then-upcoming 2011 US Open, the USTA's usual and customary practice with respect to such requests is for the USTA to engage a film crew (with experience shooting at the US Open) to capture the requested footage, which footage is then added to the USTA's existing library and made available for use subject to the USTA's standard footage licensing agreement and then applicable "rate card."

24. Major agreed to this arrangement, stating, by email dated July 19, 2011, "thank you for the USTA's generous offer to engage a crew (for which we will pay) to capture the events at the US Open for us since [the USTA] will not allow us to follow the sisters with our own cameras during the tournament." By the same email, Major identified Defendants' "wish list of things we would like for your designated crew to film." Critically, Major included in this list "Venus and Serena playing their matches with on court sound (which we understand we will have to license ...)." (Emphasis added.)

25. Thereafter, Defendants began working with the USTA's public relations department concerning the details, scope and parameters of the footage the non-party videographer would be allowed to record to be subsequently licensed to Defendants.

7

26. However, shortly prior to the commencement of the 2011 US Open, the USTA's scheduled videographer for this assignment became unavailable. Accordingly, as a generous and unprecedented accommodation to Ms. Baird and Ms. Major, and in an effort to support M & M's stated goal of promoting tennis, the USTA, as a one-time exception, permitted M & M's own film crew direct (albeit restricted) access to the NTC to record off-court, ancillary footage at the US Open for use in the Film.

27. This one-time concession was made with the understanding that, pursuant to the USTA's usual and customary policies, M & M would enter into a license agreement and pay a license fee to the USTA for all US Open footage used in the Film (including the footage to be recorded by Defendants), and that M & M would, as previously agreed "film only where and what your organization will allow" and otherwise comply with the USTA's policies.

28. Unbeknownst to the USTA, however, Defendants took advantage of this opportunity to have their crew record footage from restricted access locations, including in-stadium match footage and footage of a player meeting with an on-site US Open tournament doctor prior to withdrawing from the competition.

### The Parties' Post-US Open Negotiations

29. In the months following the 2011 US Open, the parties had numerous communications concerning the use and scope of US Open footage requested by Defendants, and the USTA licensing fees and restrictions of use associated with Defendants' request.

30. During these discussions, one of the several key issues addressed by the parties was the aggregate amount of US Open footage Defendants wished to include in

their Film. Defendants requested to include in the Film both archival US Open footage and 2011 US Open footage recorded by their production team, intending to devote approximately nine minutes of their ninety-nine minute film to US Open footage. The USTA, however, informed Defendants that, pursuant to the USTA's policies and broadcast limitations, the maximum amount of US Open footage that could be licensed would be five minutes.

31. Likewise, the USTA advised Defendants that a necessary condition to any license agreement would be a restriction on the time period in which the Film could be aired on cable and on-demand television. Specifically, the USTA, pursuant to its internal guidelines and contractual commitments, required that any contemplated license exclude the right to broadcast the Film on cable and on-demand television during the three-week period in which the US Open is held. Such a "blackout" period was an essential element of any license agreement.

32. Similarly, the USTA has strict internal editorial guidelines concerning the nature and subject matter of the footage it agrees to license to ensure that the licensed footage is in the best interests of the sport. Towards that end, the USTA declined M & M's request to include certain footage which the USTA determined was not in the best interest of the sport.

33. On January 18, 2012, the USTA reiterated its position to Defendants:

> We must stand by our stance that only 5 minutes of match footage can be used...even for 5 minutes we had to get written exceptions to our existing contracts with broadcasters. As for what footage you can and cannot use, the USTA has a stance that I reviewed with our Executive Director ... and he is the final decision maker...he stands by the decision to exclude the footage that is not in the best interest of the sport.

34. Thereafter, M & M engaged counsel to continue to negotiate the terms of a license with the USTA. These negotiations, however, were unsuccessful, and no such license was ever finalized. Months passed without any communication from Defendants, leaving the USTA to believe that the Film had stalled in production or that the Film would be made without the inclusion of US Open footage.

**Defendants Proceed Without A License**

35. Notwithstanding the parties' inability to reach an agreement on the terms and conditions of a license and license fee, Defendants proceeded with production of the Film, which, upon information and belief, premiered at the Toronto International Film Festival in September 2012.

36. The USTA first learned of the Film's premier on or about October 10, 2012 and was stunned to discover that the Film contains a significant quantity (over twenty minutes) of unlicensed US Open footage, including both archival footage and certain footage recorded by Defendants' production team at the 2011 US Open, as well as certain footage the USTA had made clear it would not license for use in the Film.

37. Given the USTA's generosity toward Defendants in accommodating their request for accreditation, the USTA was shocked and dismayed to discover that, in utter disregard of the USTA's express positions taken during the parties' pre-US Open discussions, Defendants had chosen to include in the Film over twenty minutes of unlicensed US Open footage.

38. Specifically, the Film contains approximately twelve minutes of 2011 US Open footage taken by Defendants' production crew, after being permitted access in contemplation of a license, as well as over eight minutes of archival match footage from

prior US Open tournaments, the exclusive rights to which belong to the USTA and are subject to copyright protection.

39. Clearly, given the parties' extensive discussions, Defendants were well aware that the USTA would never have agreed to license any of the US Open footage contained in the Film without payment of the licensing fees the USTA charges for such use, or without the restrictions on its use required by the USTA. Indeed, upon information and belief, Defendants have paid significant license fees to other tennis events and broadcasters for inclusion of other tournament footage in the Film, demonstrating their clear understanding of the necessity for such licenses.

40. Moreover, the USTA would never have agreed to the total length of US Open footage used, or to certain of the subject matter depicted in the footage determined by the USTA not to be in the best interest of the sport.

41. Defendants, however, having failed to reach an agreement with the USTA, simply chose to misappropriate the footage without paying any fee, including it in their Film in utter disregard for the USTA's rights. Accordingly, the USTA brings this action to enjoin Defendants from further infringing upon the USTA's copyrights and to recover the significant licensing fees to which it is due.

## COUNT I
## Copyright Infringement

42. USTA repeats and realleges each of the allegations contained in paragraphs "1" though "41" above, as if fully set forth herein.

43. USTA enjoys exclusive rights under the Copyright Act with respect to certain broadcasts of US Open match play (the "Copyrighted Broadcasts"), including but not limited to the broadcasts identified in the valid Certificates of Copyright Registration

(Registration Numbers PA 1-837-502, PA 1-837-503 and PA 1-837-504) attached hereto as Exhibit A .

44.     Among the exclusive rights granted to the USTA under the Copyright Act are the exclusive rights to reproduce, distribute and display the Copyrighted Broadcasts.

45.     In or about September 2012, Defendants displayed the Film at the Toronto International Film Festival. Defendants Maiken and Major (through their production companies M & M Films') produced and directed the Film. Defendant VSW distributed the Film. Upon information and belief, in addition to its showing at film festivals, the Film continues to be commercially exploited through movie theaters and cable distribution.

46.     Defendants willfully and intentionally copied the Copyrighted Broadcasts in the Film. Each of the Defendants has earned revenues from directing, producing, manufacturing and/or distributing the Film.

47.     The Defendants, with knowledge of the USTA's ownership of the copyright in and to the Copyrighted Broadcasts, willfully infringed the USTA's rights by continuing to distribute and otherwise exploit the Film.

48.     The Defendants' conduct as alleged above was never authorized, licensed, permitted or ratified by the USTA or its agents.

49.     By reason of the foregoing, Defendants have infringed the USTA's copyright in the Copyrighted Broadcasts.

## COUNT II
### Unjust Enrichment

50. USTA repeats and realleges each of the allegations contained in paragraphs "1" through "49" above, as if fully set forth herein.

51. As a result of Defendants' misconduct and misappropriation of the US Open footage, the Defendants have benefitted by obtaining footage for use in their Film without paying a license fee.

52. This benefit to the Defendants has been at the USTA's expense.

53. Under the circumstances, equity and good conscience require restitution.

## COUNT III
### Promissory Estoppel

54. USTA repeats and realleges each and all of the allegations contained in paragraphs "1" through "53" above, as if fully set forth herein.

55. In seeking accreditation from the USTA to shoot footage at the 2011 US Open for use in the Film, Defendants expressly promised to abide by the USTA's policies and procedures, including the need to pay a licensing fee for any US Open footage included in the Film.

56. The USTA reasonably and foreseeably relied upon this promise in granting Defendants unprecedented access to the NTC to film pre-approved behind-the-scenes footage for their Film.

57. The USTA has been injured as a result of this reliance as the Defendants have, in violation of their promise, refused to comply with the USTA's licensing policies and refused to pay for the footage, resulting in injury to the USTA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff United States Tennis Association Incorporated requests judgment against Defendants VSW Productions LLC, M & M Films, Inc., Maiken Baird and Michelle Major as follows:

- A. On Count I, (i) a permanent injunction barring and restraining Defendants from manufacturing, producing, publishing, displaying, distributing, performing or otherwise exploiting any work that infringes upon the USTA's copyrights in the Copyrighted Broadcasts, (ii) an order declaring that Defendants have willfully infringed the USTA's copyrights in and to the Copyrighted Broadcasts, and (iii) under 17 U.S.C. § 504, an award of statutory and actual damages, in an amount to be determined at trial;

- B. On Count II, awarding the USTA damages in an amount to be determined at trial;

- C. On Count III, awarding the USTA damages in an amount to be determined at trial; and

- D. Granting such other relief as the Court deems just and proper, together with interest, attorneys' fees, costs and disbursements incurred in connection with this action.

A JURY TRIAL IS DEMANDED.

Dated: White Plains, New York
June 14, 2013

        DENLEA & CARTON LLP

By: _____
      Jeffrey I. Carton (JC-8296)
      Joanna Sandolo (JS-9187)
      One N. Broadway, 5th Floor
      White Plains, NY 10601
      (914) 920-7400

*Attorneys for Plaintiff United States Tennis Association Incorporated*

# EXHIBIT A

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-837-502**

**Effective date of registration:**
May 2, 2013

---

## Title
**Title of Work:** 2011 US Open Tennis Championships - 9/11/2011

## Completion/Publication
**Year of Completion:** 2011
**Date of 1st Publication:** September 11, 2011        **Nation of 1st Publication:** United States

## Author
- **Author:** United States Tennis Association Incorporated
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States        **Domiciled in:** United States

## Copyright claimant
**Copyright Claimant:** United States Tennis Association Incorporated
70 West Red Oak Lane, White Plains, NY, 10604, United States

## Rights and Permissions
**Organization Name:** United States Tennis Association Incorporated
**Name:** Daniel Malasky
**Email:** malasky@usta.com        **Telephone:** 914-697-2333
**Address:** Senior Counsel, Professional Tennis
70 West Red Oak Lane
White Plains, NY 10604  United States

## Certification
**Name:** Daniel Malasky
**Date:** May 1, 2013

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-837-503**

Effective date of registration:

May 2, 2013

## Title

**Title of Work:** 2001 US Open Tennis Championships - 9/8/2001

## Completion/Publication

**Year of Completion:** 2001

**Date of 1st Publication:** September 8, 2001     **Nation of 1st Publication:** United States

## Author

- **Author:** United States Tennis Association Incorporated
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** United States Tennis Association Incorporated
70 West Red Oak Lane, White Plains, NY, 10604, United States

## Rights and Permissions

**Organization Name:** United States Tennis Association Incorporated
**Name:** Daniel Malasky
**Email:** malasky@usta.com     **Telephone:** 914-697-2333
**Address:** Senior Counsel, Professional Tennis
70 West Red Oak Lane
White Plains, NY 10604  United States

## Certification

**Name:** Daniel Malasky
**Date:** May 1, 2013

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-837-504**

**Effective date of registration:**

May 2, 2013

---

## Title
**Title of Work:** 2009 US Open Tennis Championships - 9/12/2009

## Completion/Publication
**Year of Completion:** 2009
**Date of 1st Publication:** September 12, 2009    **Nation of 1st Publication:** United States

## Author
- **Author:** United States Tennis Association Incorporated
  **Author Created:** entire motion picture
  **Work made for hire:** Yes
  **Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant
**Copyright Claimant:** United States Tennis Association Incorporated
70 West Red Oak Lane, White Plains, NY, 10604, United States

## Rights and Permissions
**Organization Name:** United States Tennis Association Incorporated
**Name:** Daniel Malasky
**Email:** malasky@usta.com    **Telephone:** 914-697-2333
**Address:** Senior Counsel, Professional Tennis
70 West Red Oak Lane
White Plains, NY 10604 United States

## Certification
**Name:** Daniel Malasky
**Date:** May 1, 2013