UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
UNITED STATES TENNIS ASSOCIATION,    :
INC.,                                :
                                     :   Case No: 1:13-cv-4124
                     Plaintiff,      :
                                     :
        v.                           :
                                     :
VSW PRODUCTIONS LLC, M & M FILMS,    :
INC., MAIKEN BAIRD and               :
MICHELLE MAJOR,                      :
                                     :
                     Defendants.     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' PARTIAL MOTION TO DISMISS

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Toby M.J. Butterfield
Anna Kadyshevich
488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175

*Attorneys for Defendants VSW Productions LLC,*
*Maiken Baird and Michelle Major*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

FACTUAL ALLEGATIONS ............................................................................................... 3

ARGUMENT ...................................................................................................................... 7

I.       STANDARD ON A MOTION TO DISMISS ................................................... 7

II.      PLAINTIFF'S CLAIMS FOR STATUTORY DAMAGES AND ATTORNEYS'
         FEES ARE BARRED BY THE COPYRIGHT ACT ....................................... 8

III.     PLAINTIFF HAS NOT ALLEGED A CLAIM FOR PROMISSORY ESTOPPEL ......... 9

         A.       The Complaint Fails to Allege a Clear and Unambiguous Promise ..................... 10

         B.       USTA's Reliance on any Purported "Promises" Made by Defendants Was
                  Not Reasonable or Foreseeable .................................................................. 13

IV.      USTA'S UNJUST ENRICHMENT CLAIM IS PREEMPTED AND FAILS TO
         STATE A CLAIM FOR RELIEF ................................................................... 14

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abed v. Azar*,
  No. 08 Civ. 4404, 2010 WL 103867 (S.D.N.Y. Jan. 5, 2010)................................................12

*Apsan v. Gemini Consulting, Inc.*,
  No. 98 Civ. 1256, 1999 WL 58679 (S.D.N.Y. Feb. 4, 1999) ...........................................11, 12

*Argentto Sys., Inc. v. Subin Associates, LLP*,
  No. 10 Civ. 8174, 2011 WL 2534896 (S.D.N.Y. June 24, 2011)...........................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................7, 8, 10

*Ashland Inc. v. Morgan Stanley & Co., Inc.*,
  700 F. Supp. 2d 453 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011) ...........................14

*Atrium Group de Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*,
  565 F. Supp. 2d 505 (S.D.N.Y. 2008) .........................................................................15

*Bazak Int'l Corp. v. Tarrant Apparel Grp.*,
  347 F. Supp. 2d 1 (S.D.N.Y. 2004) .......................................................................16, 17

*Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*,
  No. 11 Civ. 6345, 2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012).........................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................7, 8

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004)...................................................................................15

*DeSouza v. Andy Frain Servs., Inc.*,
  No. 12 Civ. 1308, 2012 WL 3245496 (S.D.N.Y. Aug. 6, 2012) ........................................9, 12

*Faktor v. Yahoo! Inc.*,
  No. 12 Civ. 5220, 2013 WL 1641180 (S.D.N.Y. Apr. 16, 2013)....................................14, 15

*Harris v. Mills*,
  572 F.3d 66 (2d Cir. 2009)......................................................................................7

*Henneberry v. Sumitomo Corp. of Am.*,
  415 F. Supp. 2d 423 (S.D.N.Y. 2006)..........................................................................13

*Irwin v. ZDF Enterprises GmbH,*
    No. 04 Civ. 8027, 2006 WL 374960 (S.D.N.Y. Feb. 16, 2006) ................................................9

*Jacobs v. Carnival Corp.,*
    No. 06 Civ. 0606 (DAB), 2009 WL 856637 (S.D.N.Y. Mar. 25, 2009) ............................7, 10

*Johnson & Johnson v. Am. Nat. Red Cross,*
    528 F. Supp. 2d 462 (S.D.N.Y. 2008)..........................................................................................10

*Kant v. Columbia Univ.,*
    No. 08 Civ. 7476, 2010 WL 807442 (S.D.N.Y. Mar. 9, 2010) .................................................12

*Knight Sec. L.P. v. Fiduciary Trust Co.,*
    5 A.D.3d 172, 774 N.Y.S.2d 488 (1st Dep't 2004) ...................................................................10

*Marvin Inc. v. Albstein,*
    386 F. Supp. 2d 247 (S.D.N.Y. 2005)..........................................................................................10

*Sanyo Elec., Inc. v. Pinros & Gar Corp.,*
    174 A.D.2d 452, 571 N.Y.S.2d 237 (1st Dep't 1991) ...............................................................11

*Schutty v. Speiser Krause P.C.,*
    86 A.D.3d 484, 928 N.Y.S.2d 4 (1st Dep't 2011) .....................................................................12

*Stewart v. World Wrestling Fed'n Entm't, Inc.,*
    No. 03 Civ. 2468, 2005 WL 66890 (S.D.N.Y. Jan. 11, 2005)...................................................15

*Totalplan Corp. of Am. v. Colborne,*
    14 F.3d 824 (2d Cir. 1994)...........................................................................................................12

*Woori Bank v. Citigroup Inc.,*
    No. 12 Civ. 3868, 2013 WL 1235648 (S.D.N.Y. Mar. 27, 2013) ............................................14

**RULES**

Federal Rules of Civil Procedure 8(a) ..................................................................................................1

Federal Rules of Civil Procedure 12(b)(6)...........................................................................................1

**STATUTES**

17 U.S.C. § 102(a)(6)...........................................................................................................................16

17 U.S.C. § 107......................................................................................................................................1

17 U.S.C. § 301....................................................................................................................................15

17 U.S.C. § 410(c) ...............................................................................................................................17

17 U.S.C. § 412 .................................................................................................9

17 U.S.C. § 504 .................................................................................................8

**OTHER AUTHORITIES**

6 William F. Patry, PATRY ON COPYRIGHT § 22.201 (2013) .......................................10

Defendants VSW Productions LLC, Maiken Baird and Michelle Major (together, "Defendants") submit this Memorandum pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6) in support of their Partial Motion to Dismiss the Complaint of Plaintiff United States Tennis Association, Inc. ("USTA").[1]

## **INTRODUCTION**

Defendants are documentary filmmakers who set out to tell the remarkable story of Venus and Serena Williams–the famous and controversial tennis stars who overcame all odds to rise to the top of the competitive tennis world (the "Documentary Film"). Unhappy with certain aspects of the Documentary Film, this dispute is USTA's attempt to use copyright law and now this lawsuit to enjoin the Documentary Film and prevent anyone from viewing any portion, no matter how short, of footage that USTA concludes is "not in the best interest of the sport."

As a viewing of the Documentary Film will reveal, the few clips of footage owned by USTA in the Documentary Film fall well within the bounds of fair use under the Copyright Act. 17 U.S.C. § 107. After the Documentary Film had been shot and was being edited, USTA made clear it would steadfastly refuse to license any archival footage of Serena Williams' well-known and controversial "outbursts" during US Open matches in 2009 and 2011. As explaining those brief outbursts is critical to the Documentary Film's account of the pressures and lives of the Williams sisters, USTA's stance left Defendants with no alternative but to utilize their fair use rights to show such scenes in order to report on and analyze them, despite USTA's ownership of them. USTA responded by asserting the claims herein. Defendants have multiple defenses, including *inter alia* fair use, as they deliberately limited their use of unlicensed footage in the Documentary Film to the small amounts necessary to comment on their subject matter. The First

---

[1] The remaining defendant, M+M Films, Inc., has not been served in this action.

Amendment and the law of fair use prevent USTA from using the threat and cost of legal proceedings and supposed copyright liability to try to scare filmmakers away from commenting on the Williams sisters' highly public activities, including controversial ones.  At the appropriate time, Defendants will seek redress, including attorneys' fees, for USTA's attempt to use copyright law to prevent Defendants from telling their story.

Presently, however, Defendants move to dismiss the portions of all three claims in USTA's Complaint which fail as a matter of law.  *First*, USTA is not entitled to statutory damages or attorneys' fees under the Copyright Act because USTA failed to register the copyrights to the allegedly infringed archive footage prior to the date when the Defendants' "infringement" allegedly commenced.  *Second*, USTA's promissory estoppel claim is so vague and conclusory that it must be dismissed in its entirety.  USTA maintains that the Defendants agreed to abide by all of USTA's policies and procedures in connection with their use of any US Open footage, but does not allege there was any agreement to that effect, does not claim there was a contract or a breach of contract, and does not even allege any specific promise by Defendants to abide by those policies and procedures prior to USTA granting Defendants access to film behind the scenes during the 2011 US Open.  USTA now alleges these policies and procedures include "rate card" licensing rates, editorial limitations on the footage used, restrictions on the amount of US Open footage to be used, and blackout time periods when the Documentary Film cannot be aired.  USTA does not allege, however, that it communicated those policies or procedures to Defendants at the time, or that Defendants acceded to them.  USTA's Complaint does include a conclusory allegation that *USTA* "understood" that Defendants agreed to abide by such policies, but it lacks any factual support to substantiate such a claim.  And the Complaint does nothing to allege that *Defendants* "understood" that they had to abide by such policies, or even knew of them.  Instead, USTA's vague pleading relies on even vaguer earlier

emails which make no mention of the litany of USTA's policies and procedures. This is insufficient as a matter of law to support a claim of promissory estoppel, warranting dismissal of that claim. *Third*, USTA's unjust enrichment claim is preempted by the Copyright Act and does not state a claim for relief. USTA alleges that the Defendants obtained and used "US Open footage" in the Documentary Film without paying a license fee, but its claim that the Defendants failed to obtain a license for broadcast footage owned by USTA is duplicative of USTA's claim of copyright infringement. And USTA cannot claim Defendants were unjustly enriched by use of footage which they own. The allegation of unjust enrichment does not go beyond a copyright claim, and therefore is preempted and must be dismissed.

## FACTUAL ALLEGATIONS

USTA's Complaint ("Complaint" or "Compl.")[2] alleges the following facts: Defendants are documentary filmmakers who directed and produced the Documentary Film *Venus and Serena*. Compl. ¶¶ at 1-2. In 2011, during production of the Documentary Film, Defendants approached USTA to discuss the inclusion of certain US Open video footage in the Documentary Film. *Id.* at ¶ 2. Specifically, the Defendants sought historical footage of the sisters from previous US Opens, as well as new footage of the sisters at the forthcoming 2011 US Open. *Id.* The new 2011 US Open footage was to include both off-court footage shot by Defendants as well as on-court footage of the sisters playing their matches. *Id.* at ¶¶ 2, 21-22.

The parties' communications began when defendant Michelle Major approached USTA regarding Defendants' intent to use their own film crew at the US Open; at the time, Defendant Major wrote that the Defendants were willing "to agree to film only where and what your organization will allow." *Id.* at ¶ 22. USTA characterizes this introductory email as a supposed

---

[2] For the convenience of the Court, a copy of the Complaint is attached as Exhibit A to declaration of Toby M.J. Butterfield, dated July 19, 2013.

3

"agreement" and promise upon which it relied.  *Id.* at ¶¶ 22, 55-56.  USTA alleges that in

response, USTA advised Defendants that "the USTA's usual and customary practice . . . is for

the USTA to engage a film crew . . . to capture the requested footage, which footage is then

added to the USTA's existing library and made available for use subject to the USTA's standard

footage and licensing agreement and then applicable 'rate card.'"  *Id.* at ¶ 23.  USTA then claims

that Defendants "agreed" to this arrangement because Defendant Major wrote "thank you for the

USTA's generous offer to engage a crew (for which we will pay) to capture the events at the US

Open since [USTA] will not allow us to follow the sisters with our own cameras during the

tournament" and that their filming wish list included "Venus and Serena playing their matches

with on court sound (*which we understand we will have to license*)."  *Id.* at ¶ 24 (emphasis added

in Complaint).  Although Ms. Major's email does not say so, USTA alleges this email resulted in

an "understanding" that Defendants would comply with all of USTA's policies and procedures,

regardless of what else happened subsequently, and agreed to license "all US Open footage," not

just footage of the sisters playing their matches.  *Id.* at ¶ 27.  This email, combined with Ms.

Major's earlier email in July 2011, are the "promises" allegedly made by the Defendants on

which USTA relies.  *Id.* at ¶¶ 24, 55.

    According to USTA's own allegations, USTA initially conditioned its consent to allow

Defendants to film during the 2011 US Open on Defendants' use of a camera crew to be supplied

by USTA.  *Id.* at ¶ 23.   USTA also admits that it subsequently changed its mind and "shortly

prior to the commencement of the 2011 US Open," informed Defendants that USTA would not

supply such a camera crew.  *Id.* at ¶ 26. Whether USTA's prior statement that it would supply a

camera crew should itself be characterized as a promise, an understanding, a contemplation or a

mere expectation does not matter, as Defendants have made no claim against USTA for the

inconvenience and expense they incurred when USTA did not comply.  Instead, USTA alleges

that it granted Defendants access to the USTA Billie Jean King National Tennis Center to record a limited amount of "off-court, ancillary footage." *Id.* at ¶ 26.

USTA claims that it granted that access "in contemplation" of Defendants entering into USTA's "standard footage licensing agreement and paying the USTA its standard licensing fees for such footage." *Id.* at ¶ 2.  However, USTA's Complaint makes absolutely no allegation whatsoever as to what if any promise or agreement Defendants made to USTA concerning Defendants' use of the footage they were about to shoot using their own crew.

Elsewhere, the Complaint alleges that Defendants were permitted to film behind the scenes at the 2011 US Open "with the understanding that, pursuant to USTA's *usual and customary policies*" Defendants would "enter into a license agreement and pay a license fee to the USTA for all US Open footage used in the Film (including the footage to be recorded by Defendants) . . . and otherwise comply with the USTA's policies." *Id.* at ¶ 27 (emphasis added).[3]  There is no allegation that anyone other than USTA had such an understanding, nor does the Complaint allege that Defendants knew what those "policies" were.

Months later, long after filming concluded, when the parties were attempting to negotiate a license for Defendants to use archival footage of actual matches at prior USTA events such as the 2001 and 2009 U.S. Opens (which is the subject of USTA's first claim for copyright

---

[3] Significantly, USTA uses the phrase "US Open footage" throughout the Complaint without assigning it any definition.  USTA uses this phrase to include footage in which it owns the copyright (including historical US Open footage) as well as footage that the Defendants shot on their own. *See, e.g.*, *id.* at ¶ 2 ("Defendants simply misappropriated the US Open footage (including footage for which the USTA enjoys copyright protection)"); *id.* at ¶ 3 (referring to "US Open footage" as "historical footage of the Williams' sisters [sic]" and "new footage of the sisters in connection with the yet to be played 2011 US Open").  Accordingly, when the Complaint alleges that Defendants "expressly promised" to abide by the USTA's "policies and procedures," USTA is trying to avoid saying that Defendants "expressly" agreed to abide by the USTA's policies with respect to footage shot by Defendants themselves, when there is no allegation of such a bizarre discussion.

infringement), USTA notified Defendants of its "policies and procedures" concerning US Open footage. *Id.* at ¶¶ 29-33.   Those USTA "policies" apparently include (in addition to their standard licensing agreement and "rate card" mentioned earlier): (1) "editorial guidelines concerning the nature and subject matter of the footage;" (2) restriction on the time period in which the Documentary Film could be aired on cable and on-demand television (including a "blackout" period during the three-week period in which the US Open is held); (3) a maximum amount of five minutes of "US Open footage." *Id.* at ¶ 30-33.

As the Complaint notes, those discussions made clear that the Defendants and USTA had not and could not come to an agreement regarding the Defendants' use of "US Open footage." *Id.* at ¶ 34.  As USTA alleges, Defendants adamantly refused to comply with USTA's request at that time to only include footage that USTA deemed to be "in the best interest of the sport." *Id.* at ¶ 33.  Given the parties' "inability to reach an agreement on the *terms and conditions*" of any license and license fee, Defendants went on to produce the Documentary Film without USTA's consent. *Id.* at ¶ 35 (emphasis added).  Specifically, Defendants included the "behind the scenes" footage that they shot on their own (the copyright to which is owned by Defendants), plus short excerpts of archival footage of actual US Open matches from 2001, 2009 and 2011, including the footage that USTA "had made clear it would not license for use" in the Documentary Film. *Id.* at ¶ 36.  USTA now claims that it "would have never agreed to the total length of the US Open footage used, or to certain of the subject matter depicted in the footage determined by the USTA not to be in the best interest of the sport." *Id.* at ¶ 40.

Obviously unhappy with Defendants' refusal to turn over editorial control of their Documentary Film to USTA, USTA has been forced to go back and try to recast the July 2011 emails about what *USTA's* crew would do, and to treat them as if they were emails about what *Defendants'* crew would do and what Defendants would do with any footage Defendants shot.

In fact, those emails do not speak to that issue at all.  As USTA cannot allege any specific promise in those emails, USTA cannot substantiate its conclusory claim that the Defendants made the promises described above.

USTA complains that Defendants included footage that the USTA "would never agree" to license in the Documentary Film, thereby infringing USTA's copyright in archival footage of US Open broadcasts from 2001, 2009 and 2011, identified in the Complaint as the "Broadcast Footage" (Count I).  In Count II, USTA alleges that Defendants were unjustly enriched in general by their "misappropriation" of the so-called US Open footage; and in Count III, USTA claims that Defendants are liable for promissory estoppel because they violated a supposed "promise" to USTA by refusing to comply with USTA's policies and procedures in connection with the Defendants' use of US Open footage .  USTA seeks, *inter alia*, a permanent injunction barring Defendants from exploiting the Documentary Film, statutory damages under § 504 of the Copyright Act and attorneys' fees, and damages.  Compl., Prayer for Relief.

## ARGUMENT

## I.

## STANDARD ON A MOTION TO DISMISS

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) mandates dismissal of a cause of action if it does not "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  However, mere conclusory averments are insufficient to meet this pleading threshold; rather, a claim must be supported by specific factual allegations, which if accepted as true, are sufficient to support the accusation's plausibility.  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009).  Moreover, "'conclusory allegations or legal conclusions masquerading as factual conclusions' will not withstand dismissal."  *Jacobs v. Carnival Corp.*, No. 06 Civ. 0606 (DAB), 2009 WL 856637, at

*3 (S.D.N.Y. Mar. 25, 2009) (citing *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240

(2d Cir. 2002)). In the absence of specific factual allegations, pleadings which contain "no more

than conclusions[] are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679; *see also*

*Twombly*, 550 U.S. at 555 (plaintiff must put forth sufficient "[f]actual allegations . . . to raise a

right to relief above the speculative level" in order to survive a motion to dismiss). USTA's

claims set forth below fail to meet this standard.

## II.

### PLAINTIFF'S CLAIMS FOR STATUTORY DAMAGES AND ATTORNEYS' FEES ARE BARRED BY THE COPYRIGHT ACT

On the face of the Complaint, USTA is not entitled to statutory damages or attorneys'

fees. Section 412 of the Copyright Act is explicit that statutory damages and attorneys' fees are

not available if the alleged infringement:

> . . . commenced after the first publication of the work and before the effective date
> of its registration, unless such registration is made within three months after the
> first publication of the work. 17 U.S.C. § 412(2).

The rationale is obvious: a copyright owner who has not registered his or her work is not entitled

to the statutory benefits of registration. If the owner then later applies to register that copyright,

he, she or it is only entitled to the statutory benefits of registration for new infringements that

commence thereafter. The registration does not allow the owner to reach back in time and obtain

the benefits of statutory damages and attorneys' fees for alleged infringements which already

happened or already commenced.

Here, Plaintiff alleges that Defendants used the Broadcast Footage in the Documentary

Film which premiered at the Toronto International Film Festival in September 2012 and that the

Documentary Film continues to be commercially exploited through movie theaters and cable

distribution. Compl. at ¶ 45. However, USTA did not register the Broadcast Footage with the

U.S. Copyright Office until May 2013, months after the purported infringement commenced and

years after the Broadcast Footage's first publications in 2001, 2009, and 2011,

respectively.  Compl. Exhibit A.  Accordingly, USTA's claims for statutory damages and

attorneys' fees are barred.  *See, e.g.*, *Argentto Sys., Inc. v. Subin Associates, LLP*, No. 10 Civ.

8174, 2011 WL 2534896, at *3 (S.D.N.Y. June 24, 2011) ("Because the alleged infringement

began before the effective date of the copyright registration of the software at issue, the motion

to dismiss Plaintiffs' claims for statutory damages and attorney fees is granted"); *Irwin v. ZDF

Enterprises GmbH*, No. 04 Civ. 8027, 2006 WL 374960, at *6 (S.D.N.Y. Feb. 16, 2006)

(dismissing all claims for statutory damages and attorneys' fees where infringement occurred

prior to registration).  *See also* 6 William F. Patry, PATRY ON COPYRIGHT § 22.201 (2013)

("[S]tatutory damages are barred if infringement begins before registration.  It matters not

whether infringement continues thereafter, or stops and starts again.") (collecting cases).

Statutory damages and attorneys' fees are unavailable.  That portion of the Complaint must be

dismissed.

### III.

### PLAINTIFF HAS NOT ALLEGED A
### CLAIM FOR PROMISSORY ESTOPPEL

To state a claim for promissory estoppel under New York law, USTA must allege: "(1) a

clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3)

injury to the promisee as a result of the reliance."  *DeSouza v. Andy Frain Servs., Inc.*, No. 12

Civ. 1308, 2012 WL 3245496, at *3 (S.D.N.Y. Aug. 6, 2012).  The Complaint fails to allege that

Defendants made a clear and unambiguous promise, and fails to allege that USTA reasonably

and foreseeable relied on such any such promise, so Count III should be dismissed.

9

A.      **The Complaint Fails to Allege a Clear and Unambiguous Promise**

USTA claims that the Defendants "expressly promised to abide by the USTA's policies and procedures, including the need to pay a licensing fee for any US open footage included in the Film." Compl. ¶ 55. However, this conclusory allegation is insufficient to demonstrate that Defendants made any such "express promise." *See Jacobs*, 2009 WL 856637 at *3 ("conclusory allegations masquerading as factual conclusions" will not withstand dismissal); *Iqbal*, 556 U.S. at 678 ("conclusory statements" cannot substitute for factual allegations to survive a motion to dismiss). Courts routinely dismiss promissory estoppel claims where the plaintiff has failed to allege a clear and unambiguous promise. *See, e.g.*, *Marvin Inc. v. Albstein*, 386 F. Supp. 2d 247, 254 (S.D.N.Y. 2005) (dismissing for failure to allege clear and unambiguous promise); *Johnson & Johnson v. Am. Nat. Red Cross*, 528 F. Supp. 2d 462, 464 (S.D.N.Y. 2008) (same); *Knight Sec. L.P. v. Fiduciary Trust Co.*, 5 A.D.3d 172, 174, 774 N.Y.S.2d 488, 490 (1st Dep't 2004) (same).

To support its claim for promissory estoppel, USTA identifies two statements made by the Defendants: (1) that, at the beginning of the parties' discussions, Defendants stated they were "willing to film only where and what your organization will allow" (Compl. ¶ 22); and that (2) at some point during their negotiations before the 2011 US Open began, Defendants thought they would need to seek a license for footage of "Venus and Serena playing their matches with on court sound." *Id.* at ¶ 24. Twisting these quotes out of context, USTA claims that they support an allegation that there was an "understanding" that Defendants would enter into a license "for *all* of the US Open footage" and that they would "otherwise comply with the USTA's policies." *Id.* at ¶ 27 (emphasis added).[4] USTA's policies concerning what it describes as US Open footage

---

[4] As discussed *supra*, as used in the Complaint, the phrase "US Open footage" includes footage in which USTA owns the copyright (including historical US Open footage) as well as footage that the Defendants shot on their own. *See id* at ¶¶ 2-3.

include: (1) USTA's standard footage and licensing agreement and then applicable "rate card"

(*Id.* at ¶ 23); (2) limitations on the amount of US Open footage that Defendants can include in

the Documentary Film; (3) broadcast "blackout" limitations; and (4) "editorial guidelines

concerning the nature and subject matter of the footage" "to ensure that the licensed footage is in

the best interests of the sport."  *Id.* at ¶¶ 30-33.  However, nowhere in the quoted emails (or

elsewhere in the Complaint) does USTA identify any statements by Defendants in which they

allegedly referred, let alone agreed, to such policies and procedures.[5]

The law is clear that the Defendants' promise must have been "clear and unambiguous"

not "vague" or "indefinite."  *Sanyo Elec., Inc. v. Pinros & Gar Corp.*, 174 A.D.2d 452, 453, 571

N.Y.S.2d 237, 238 (1st Dep't 1991) (the alleged promise "was not only vague and indefinite but

. . . it was completely contradicted shortly thereafter by written representations"); *Bd. of Trustees

ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11 Civ. 6345, 2012 WL 3930112, at *6

(S.D.N.Y. Sept. 10, 2012) ("A promise that is too vague or too indefinite is not actionable under

a theory of promissory estoppel") (citing cases); *Apsan v. Gemini Consulting, Inc.*, No. 98 Civ.

1256, 1999 WL 58679, at *5 (S.D.N.Y. Feb. 4, 1999) (dismissing promissory estoppel claim

where purported promise was "quite vague and lacked a definite term").  Indeed, USTA does not

even allege that it discussed its policies concerning editorial content, blackout periods, or

limitations on the amount of US Open footage with Defendants at the time of their supposed

"promises."  The discussion of USTA's policies and procedures is not alleged to have occurred

---

[5] The only reference in USTA's Complaint to *any* licensing discussed by Defendants is
Defendant Major's comment that their filming wish list included "Venus and Serena playing
their matches with on court sound (*which we understand we will have to license*)."  *Id.* at ¶ 24
(emphasis in original).  If anything, this email indicates that in July 2011 it was Defendants'
understanding that *only* the footage of the sisters playing their matches with "court sound" would
be licensed from USTA.

until months later, after the 2011 US Open ended and the footage was shot. *Id.* at ¶¶ 29-33 ("The Parties' Post-US Open Negotiations").  USTA cannot rely on such subsequent negotiations to support its claim that Defendants made promises (and that USTA relied on such promises) *before* the Defendants' were granted access to the 2011 US Open.  Yet, that is the theory behind USTA's promissory estoppel claim.[6]

Moreover, it is evident from the Complaint that there was no "clear and unambiguous promise" because the parties' negotiations "were unsuccessful," "no such license was ever finalized" and the parties were unable to "reach an agreement on the *terms and conditions*." Compl. ¶¶ 34-35 (emphasis added).  This is fatal to USTA's promissory estoppel claim.  *See, e.g., Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 833 (2d Cir. 1994) (no claim for promissory estoppel where "rights were proposed in draft agreements" but "no agreement was ever reached"); *DeSouza*, 2012 WL 3245496, at *3 (no clear and unambiguous promise where the defendant's offer was "tentative"); *Schutty v. Speiser Krause P.C.*, 86 A.D.3d 484, 485, 928 N.Y.S.2d 4, 6 (1st Dep't 2011) ("[T]he parties' lengthy and fruitless negotiations establishes as a matter of law that there was no clear and unambiguous promise on which plaintiff reasonably could have relied.").  Accordingly, Count III of the Complaint must be dismissed.[7]

---

[6] In USTA's pre-motion letter to the Court (attached as Exhibit C to the Butterfield Decl.), USTA alleges that "This concession was made with the agreement that Defendants would enter into the USTA's standard footage license agreement and would film only where and what the USTA would allow, as previously promised."  Butterfield Decl. Ex. C at p. 2.  Here, USTA confusingly conflates two separate emails by Defendants, neither of which constitute any form of agreement, do not mention USTA's licensing agreement, and both of which describe a situation which did not arise by reason of USTA renouncing its prior commitment to provide a film crew.

[7] In addition, USTA has not alleged an unconscionable injury.  An "unconscionable injury is a required element of any promissory estoppel claim."  *Kant v. Columbia Univ.*, No. 08 Civ. 7476, 2010 WL 807442, *5 (S.D.N.Y. Mar. 9, 2010); *Abed v. Azar*, No. 08 Civ. 4404, 2010 WL 103867 (S.D.N.Y. Jan. 5, 2010) (no promissory estoppel claim where plaintiff failed to allege an unconscionable injury, "i.e., injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement").  USTA's conclusory allegation that

**B.      USTA's Reliance on any Purported "Promises" Made by Defendants Was Not Reasonable or Foreseeable**

Even if the two emails quoted above somehow demonstrated a "clear and unambiguous" promise on the part of Defendants (which they do not), it was neither reasonable nor foreseeable for USTA to rely on those emails at that time to conclude that the Defendants agreed to abide by USTA's policies, procedures and licensing guidelines before granting Defendants permission to film at the US Open.  The Defendants' prior willingness to film "when and where" USTA permitted, and Defendant Major's statement that Defendants then understood that they would have to seek a license for "*on-court*" footage of the Williams sisters, do not evidence an "understanding" that the Defendants would abide by USTA editorial guidelines, "blackout periods" or other policies in connection with *off-court* footage shot by Defendants.  The two emails are limited statements about what Defendants were willing to do at a point in time when USTA was promising to provide a film crew:  a promise that USTA did not abide by.  When USTA broke that promise but allowed Defendants to enter with their own film crew, Defendants made no promise about their use of the fruits of Defendants' labors, and none is alleged.  When the lack of such a promise came to USTA's attention later, as the Complaint alleges, the parties failed to come to any agreement.  Compl. at ¶¶ 29-34.

If USTA is now claiming that in August 2011 it relied on the Defendants' July 2011 emails as a "clear and unambiguous promise" to comply with all of USTA's undisclosed policies and procedures, such reliance was wholly unreasonable and unforeseeable.  Those emails discuss an arrangement which never came to pass, and made no mention of the policies USTA now seeks to enforce.  Such reliance by USTA on such emails would be unreasonable and completely unforeseeable by Defendants, further warranting dismissal of this claim.  *See Henneberry v.*

---

it has been injured as a result of Defendants' refusal to comply with the USTA's policies and procedures is unexplained, lacks any substance and does not meet USTA's pleading burden.

*Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 444 (S.D.N.Y. 2006) ("plaintiff must demonstrate that the actions it took in reliance on defendant's promise were unequivocally referable to the alleged promise") (internal quotations omitted); *Ashland Inc. v. Morgan Stanley & Co., Inc.*, 700 F. Supp. 2d 453, 472 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011) ("any promise to act was so vague and indefinite that reliance upon that promise . . . cannot be said to be reasonable.").

## IV.

### USTA'S UNJUST ENRICHMENT CLAIM IS<br>PREEMPTED AND FAILS TO STATE A CLAIM FOR RELIEF

USTA's claim for unjust enrichment must be dismissed as preempted by the Copyright Act.  Under New York law, an unjust enrichment claim requires a plaintiff to prove that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover."  *Woori Bank v. Citigroup Inc.*, No. 12 Civ. 3868, 2013 WL 1235648, at *5 (S.D.N.Y. Mar. 27, 2013) (quotations omitted).

Here, USTA claims that "[a]s a result of Defendants' misconduct and misappropriation of the US Open footage, the Defendants have benefitted by obtaining footage for use in their Film without paying a license fee."  Comp. ¶ 51.  However, USTA is trying to simply recast its copyright claim as an unjust enrichment claim, which it may not do.

Section 301 of the Copyright Act preempts an unjust enrichment claim when "(i) the work at issue 'comes within the subject matter of copyright' and (ii) the right being asserted is 'equivalent to any of the exclusive rights within the general scope of copyright.'"  *Faktor v. Yahoo! Inc.*, No. 12 Civ. 5220, 2013 WL 1641180, at *4 (S.D.N.Y. Apr. 16, 2013) (quoting 17

14

U.S.C. § 301(b)).  USTA's claim of unjust enrichment with respect to any footage owned by USTA are preempted by the Copyright Act.

The first preemption prong is satisfied when the state law claim "applies to a work of authorship fixed in a tangible medium of expression and falling within the ambit of one of the categories of copyrightable works."  *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  USTA claims unjust enrichment in connection with Defendants' "misappropriation" of US Open film footage—unquestionably a work of authorship as defined by the Copyright Act.  *See* 17 U.S.C. § 102(a)(6) ("subject matter" of copyright includes "motions pictures and other audiovisual works"); *Briarpatch*, 373 F.3d at 305 (same).

The second prong of preemption is satisfied when the state-created right may be abridged by an act that would "in and of itself" infringe an exclusive right provided by federal copyright law.  *Faktor*, 2013 WL 1641180, at *4.  Courts in this Circuit have repeatedly held that "an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted."  *Stewart v. World Wrestling Fed'n Entm't, Inc.*, No. 03 Civ. 2468, 2005 WL 66890, *5 (S.D.N.Y. Jan. 11, 2005) (internal quotations omitted); *Faktor*, 2013 WL 1641180, at *5 (same).

Here, USTA alleges that the Defendants benefited from their "misconduct and misappropriation of the US Open footage," by "obtaining footage for use in their Film without paying a license fee."  Compl. ¶ 51.  As discussed above, the Complaint repeatedly refers to "US Open footage" to mean the Broadcast Footage owned by USTA as well as the footage shot by the Defendants.  *See* p. 5 n.2, *supra*.  USTA's claims of misappropriation with respect to the Broadcast Footage clearly fall into the "exclusive rights" afforded to it as the copyright owner. *See, e.g., Atrium Group de Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc.*, 565 F. Supp. 2d 505, 509 (S.D.N.Y. 2008) (dismissing unjust enrichment claim where the rights to be

vindicated fell under exclusive rights afforded to copyright owner).  And to the extent that USTA purports to have any ownership or rights in the footage shot by the Defendants, such claims are equally preempted by the Copyright Act.[8]

Moreover, USTA has failed to state a claim for unjust enrichment for the footage shot by Defendants.  "A complaint does not state a cause of action in unjust enrichment if it fails to allege that defendant received something of value which belongs to the plaintiff."  *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004).  The footage shot by Defendants is not owned by the USTA, but rather was shot and is registered to the Defendants. *See* Butterfield Decl. ¶¶ 5-6.  If the parties had agreed that USTA was entitled to a "licensing fee" for the footage that Defendants had shot themselves, then there would have been an agreement for USTA to enforce.  To the contrary, according to the Complaint, the only licensing fee that Defendants ever even acknowledged was the licensing of footage of the Williams sisters playing matches with on-court sound (i.e., footage owned by USTA).  Compl. at ¶ 24.  Nothing in the Complaint suggests that Defendants agreed to pay a licensing fee for footage shot by and

---

[8] USTA's unspecified use of the phrase "US Open footage" to collectively refer to any and all footage of any US Open appears to be an attempt to confuse the Court as to the ownership of such footage.  If the Court is in any doubt about Defendants' ownership of the footage shot by Defendants, it can take judicial notice of the copyright registration which Defendants obtained in that footage.  Under the Copyright Act, registration is prima facie evidence of ownership.  17 U.S.C. § 410(c) ("in any judicial proceedings, the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.")  USTA's Complaint fails to explain how it could be unjust, or how Defendants could have been unjustly enriched, for Defendants to use footage they paid for and own in their Documentary Film.  USTA does not allege that it demanded that Defendants pay to access USTA's premises: quite the opposite, the Complaint alleges that USTA simply let Defendants in, knowing they were filming their Documentary Film.  USTA's failure to seek, obtain or document any promise by Defendants may have been a mistake by USTA or an action it now regrets.  However, the only unjust act is USTA's attempt to undo its decision and to sue Defendants to enjoin the Documentary Film.

paid for by the Defendants, or even indicated a willingness to do so.  Here, where there obviously was no agreement, the USTA attempts, *ex post*, to allege some sort of right over the footage Defendants own on account of "misappropriation."  Compl. ¶ 51.  However, without an agreement that Defendants would indeed pay a fee to USTA for footage that Defendants own, there can be no unjust enrichment.  *See Bazak Int'l Corp.* at 4 (Plaintiff "has failed to state a claim for relief under the theory of unjust enrichment because, absent a contract, the benefit that [Defendant] garnered from selling the merchandise was not at [Plaintiff's] expense. Without a valid, enforceable contract, [Plaintiff] had no interest at all in the merchandise in question.").

## <u>CONCLUSION</u>

For each of the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Complaint, in part.

Dated: New York, New York
July 19, 2013

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By: <u>/ S/ Toby M.J. Butterfield</u>
Toby M.J. Butterfield
Anna Kadyshevich

488 Madison Avenue, 10th Floor
New York, New York 10022
Phone:  (212) 980-0120
Fax:  (212) 593-9175
tbutterfield@fkks.com
akadyshevich@fkks.com

*Attorneys for Defendants VSW Productions LLC,*
*Maiken Baird and Michelle Major*