UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
United States Tennis Association, Inc.,

               Plaintiff,

                                                13-cv-4124 (NSR)

            - against -                         **<u>Memorandum & Order</u>**


VSW Productions LLC, M & M Films, Inc.,
Maiken Baird, and Michelle Major,

               Defendants.
----------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

      Before the Court is Defendants' partial motion to dismiss Plaintiff's complaint pursuant

to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, this Court now grants the motion to

dismiss in part and denies the motion to dismiss in part.

## BACKGROUND

      The United States Tennis Association ("UTSA" or "Plaintiff") is a not-for-profit

organization and the national governing body of the sport of tennis in the United States. *See*

Compl. at 5. During the late summer every year, the USTA stages its marquee event, the US

Open Tennis Championships (the "US Open") at the USTA's Billie Jean King National Tennis

Center. *See id* at 16. The US Open draws over 700,000 spectators annually to the National

Tennis Center and nearly all of the biggest names in tennis to compete. (*See* Compl. at ¶ 17.) As

the owner and operator of the event, the USTA enjoys the right to grant licenses to third parties

to record and broadcast footage of the US Open. (*See* Compl. at ¶¶ 18-20.) These licenses

provide a vital source of revenue to the USTA, critical to its continued success as a 501(c)(6).

*See id.* The USTA grants licenses to third parties both for live US Open broadcasts as well as for the use of archival footage, including footage of on-court match play, awards presentations, press conferences, player interviews and "8 Roll" footage of the stands and grounds of the National Tennis Center during the US Open. (*See* Compl. at ¶ 19.) As one of its greatest assets, the USTA guards and controls the market for licenses of US Open footage. (*See* Compl. at ¶¶ 18 & 20.)

The USTA first came into contact with Defendants VSW Productions LLC, M & M Films, Inc., Maiken Baird, and Michelle Major (collectively "Defendants") in or about July, 2011, when Defendants approached the USTA. (*See* Compl. at ¶ 22.) At that time, Defendants were in production of a commercial motion picture concerning the lives and careers of American superstar tennis players Venus and Serena Williams. (*See* Compl. at ¶ 21.) Defendants wished to include in their Film both archival footage of the Williams sisters competing in the US Open, a tournament that each of the sisters has won multiple times, as well as off-court, behind the scenes footage of the 2011 US Open, which Defendants wished to obtain. (*See* Compl. at ¶ 22.) Recognizing that the USTA's permission would be required in order to include any US Open footage in the Film, Defendants sought such permission, writing to the USTA:

> ... We have already filmed at the Australian Open, The Aegon International and Wimbledon this year and are hoping that you will help us acquire accreditation for our small crew of 3 or 4 plus 2 producers to film at the US Open .. . *we are entirely willing to agree to film only where and what your organization will allow.* Please let me know how we should proceed.

(Compl. at ¶ 22.)

In making this request, Defendants acknowledged the USTA's right to control who may record (and ultimately use) footage of the US Open, and that the USTA's polices would dictate, including what footage Defendants were able to obtain. (*See* Compl. at ¶ 22.)

The USTA expressed its willingness to work with Defendants with regard to the Film, subject to the USTA's standard licensing policies. (*See* Compl. at ¶ 23.) Specifically, the USTA advised Defendants that, in accordance with those policies, the footage Defendants requested would be recorded by a third-party film crew (with experience shooting at the US Open) and then licensed to Defendants for use on the Film pursuant to the USTA's standard footage licensing agreement and the applicable "rate card." (*See id.*)

Defendants agreed to this arrangement, and provided the USTA with a "wish list" of footage that they sought to capture. Defendant Michelle Major included in this list "Venus and Serena playing their matches with on court sound (which we understand we will have to license . . . )." (Compl. at ¶ 24.) Thereafter, Defendants began working with the USTA's public relations department concerning the details, scope and parameters of the footage the USTA's regularly retained videographer would be allowed to record to be subsequently licensed to Defendants. (*See* Compl. at ¶ 25.)

Shortly prior to the US Open, however, the USTA's scheduled videographer became unavailable and the USTA - as a one-time concession - allowed Defendants' film crew access to the National Tennis Center  to record off-court, ancillary footage for use in the film. (*See* Compl. at ¶ 26.) This concession was made with the agreement that Defendants would enter into the USTA's standard footage license agreement for any footage actually used in the Film, and would "film only where and what [the USTA would] allow," as previously promised. (Compl. at ¶ 27.)

Following the 2011 US Open, the parties continued to negotiate the terms of a license for any US Open footage actually used by Defendants in the Film. (*See* Compl. at ¶ 29-33.) Ultimately, however, no agreement was reached and Defendants never paid any licensing fees to

the USTA, leaving the USTA to believe that the project had been abandoned or that Defendants had determined to forego the inclusion of US Open footage. (*See* Compl. at ¶ 34.)

The USTA was therefore stunned to later discover that Defendants had completed and distributed their ninety-minute Film with over twenty minutes of unlicensed US Open footage. *See* Compl. at ¶ 37. This footage includes approximately eight minutes of archival match footage, subject to the USTA's copyright rights (the "Archival Footage"), as well as approximately twelve minutes of National Tennis Center Footage, captured by Defendants at the 2011 US Open. (*See* Compl. at ¶ 38.)

The USTA thereafter brought this action seeking to enforce both its copyright rights in the Archival Footage as well as its common law right to recompense for Defendants' use of the National Tennis Center Footage. Defendants do not challenge the USTA's copyright claim. Instead, Defendants' motion seeks dismissal of the USTA's demand for statutory damages and attorneys' fees on the USTA's copyright claim. However, the USTA withdrew its request for such damages in its Opposition, thus the Court deems this dismissed. (*See* Opposition at 5.) Therefore, this motion is limited to the USTA's state law claims for unjust enrichment and promissory estoppel.

**DISCUSSION**

**I. Legal Standard under 12(b)(6)**

On a motion to dismiss, this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). Nonetheless, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting

4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A

claim has "facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129

S.Ct. at 1949. "Determining whether a complaint states a plausible claim for relief will be a

context specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank

of Commerce*, 694 F.Supp.2d 287, 296 (S.D.N.Y. 2010). Although "a complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation

to provide the grounds of his entitlement to relief requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music

Entm't*, 592 F.3d 314, 321 (2d Cir. 2010).

      In ruling on a motion to dismiss, a "court may consider the facts as asserted within the

four corners of the complaint together with the documents attached to the complaint as exhibits,

and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture,

LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation

omitted). "Even where a document is not incorporated by reference, the court may nevertheless

consider it where the complaint relies heavily upon its terms and effect, which renders the

document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.

2002) (internal quotation marks and citations omitted).

      The issue before the Court on this motion to dismiss "is not whether ... plaintiff will

ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 519 U.S. 808 (1996) (citation omitted).

## II. Unjust Enrichment Claim

In order to plead an unjust enrichment claim adequately, a plaintiff must allege that "'(l) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Georgia Malone & Co., Inc. v. Rieder,* 973 N.E.2d 743, 746 (N.Y. 2012) (quoting *Mandarin Trading Ltd.,* 944 N.E.2d 1104, 1110 (N.Y. 2011)). " '[A] claim for unjust enrichment will lie only where the defendant possesses money or received a benefit which in equity and good conscience the defendant should not retain because it *belongs to the plaintiff.'* " *Nat'l Westminster Bank PLC v. Grant Prideco, Inc.,* 261 F.Supp.2d 265, 275 (S.D.N.Y. 2003) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* No. 97 Civ. 4978(LMM), 1999 WL 47223, at *4 (S.D.N.Y. Feb. 3, 1999)) (brackets omitted); *see also Universal CityStudios, Inc. v. Nintendo Co., Ltd.,* 797 F.2d 70, 79 (2d Cir. 1986) (affirming denial of relief on unjust enrichment counterclaim because Counterclaim–Defendant "did not obtain money that was owed to" Counterclaim–Plaintiff); *Martes v. USLIFE Corp.,* 927 F.Supp. 146, 149 (S.D.N.Y. 1996) (denying unjust enrichment claim because Defendant did not "receive [ ] or possess [ ] anything that belongs to the plaintiff."); *Reed Int'l Trading Corp. v. Donau Bank AG,* 866 F.Supp. 750, 757 (S.D.N.Y. 1994) (Sotomayor, J.) ("[P]laintiffs cannot maintain an unjust enrichment claim for the return of funds in which they had no possessory interest...."); *M & T Bank Corp. v. Gemstone CDO VII, Ltd.,* 23 Misc.3d 1105(A), 2009 WL 921381, at *18 (N.Y.Sup. Apr. 7, 2009) ("In the absence of any ... 'possessory interest,' Plaintiff cannot maintain a cause of action for unjust enrichment.).

Defendants argue that the footage shot by Defendants is not owned by the USTA, but rather was shot and is registered to the Defendants. *See* Butterfield Decl. ¶ 5. Defendants included the "behind the scenes" footage that they shot on their own (the copyright to which is owned by Defendants), plus short excerpts of archival footage of actual US Open matches from 2001, 2009 and 2011, including the footage that USTA "had made clear it would not license for use" in the Documentary Film. (Compl. at ¶ 36.)

Defendants argue that the unjust enrichment claim is preempted by the Copyright Act. Section 301 of the Copyright Act preempts a state law claim when "(i) the work at issue 'comes within the subject matter of copyright' and (ii) the right being asserted is 'equivalent to any of the exclusive rights within the general scope of copyright.'" *Faktor v. Yahoo! Inc.*, No. 12 Civ. 5220, 2013 WL 1641180, at *4 (S.D.N.Y. Apr. 16, 2013) (quoting 17 U.S.C. § 301(b)). Regarding the first prong, Defendants argue that the unjust enrichment claim is made in connection with Defendants' "misappropriation" of Open film footage, a work of authorship that falls within the subject matter of the Copyright Act.  Conversely, Plaintiff argues that the unjust enrichment stems not from the misappropriated footage, but from the access to the National Tennis Center and Defendants' subsequent filming of US Open footage.  Moreover, footage that is the focus of the unjust enrichment claim cannot be subject to copyright protection.

As for the second prong, Defendants cite to case law affirming the Second Circuit's commitment to holding that "an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted."  *Stewart v. World Wrestling Fed'n Entm't, Inc.*, No. 03 Civ. 2468, 2005 WL 66890, at *5 (S.D.N.Y. Jan. 11, 2005) (internal quotation marks omitted).  Section 301 of the Copyright Act preempts an unjust enrichment claim when "(i) the work at issue 'comes within the subject matter of copyright' and (ii) the right

7

being asserted is 'equivalent to any of the exclusive rights within the general scope of copyright.'" *Faktor v. Yahoo! Inc*., No. 12 Civ. 5220, 2013 WL 1641180, at *4 (S.D.N.Y. Apr. 16, 2013) (quoting 17 U.S.C. § 30 1(b)). Defendants argue that USTA's claim of unjust enrichment with respect to any footage owned by USTA is preempted by the Copyright Act.

Plaintiff argues that it is not asserting rights in the footage obtained by Defendant's film which are "equivalent to" rights protected by the Copyright act.  Instead, Plaintiff contends that it has the right to restrict who may obtain footage at the Open, to set conditions for recording, and to charge a fee for filming such footage.  *See generally Nat'l Exhibition Co. v. Fass*, 143 N.Y.S.2d 767, 770 (Sup. Ct. N.Y. Cnty. 1955).  Plaintiff alleges that it "would have never agreed to the total length of the US Open footage used, or to certain of the subject matter depicted in the footage determined by the USTA not to be in the best interest of the sport", which unjustly enriched Defendants. (Compl. at ¶ 40.)

Plaintiff's unjust enrichment claim is preempted by the Copyright Act. "The overwhelming majority of courts in this circuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." *Boyle v. Stephens Inc.,* No. 97 Civ. 1351, 1998 WL 690816, at *6 (S.D.N.Y. Sept. 29, 1998) (collecting cases); *see Logicom,* 2004 WL 1781009, at *18; *Netzer v. Continuity Graphic Assocs., Inc.,* 963 F.Supp. 1308, 1321–22 (S.D.N.Y. 1997). Because Plaintiff's unjust enrichment claim involves a work that falls within the subject matter of copyright and the right it is asserting is equivalent to the rights within the general scope of copyright, its claim is dismissed as preempted by the Copyright Act.

Moreover, unjust enrichment claims generally involve no more than the "acts of reproduction, adaptation, performance, distribution or display" that the Copyright Act already

8

covers. *Briarpatch Ltd., L .P. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 305-06 (2d Cir. 2004).

Indeed, the rights Plaintiff seems intent on protecting in the unjust enrichment count involve the

reproduction and adaptation of its copyrighted broadcasts (Compl.¶¶ 119–123), rights protected

by 17 U.S.C. § 106. Although proof of defendant's enrichment is required for an unjust

enrichment claim, *Clark v. Daby,* 751 N.Y.S.2d 622, 623 (3d Dep't 2002), but not for a

copyright infringement claim, this additional burden does not render the state law claim

"qualitatively different" from the rights protected by copyright law. Plaintiff alleges only that

Defendants were enriched from their unauthorized use of its broadcasts, a claim equivalent to the

assertion of damages from the copying of materials protected by the Copyright Act. The claim is

therefore preempted. *Briarpatch,* 373 F.3d at 306–07; *see Boyle*, 1998 WL 690816, at *6; *Am.*

*Movie Classics Co. v. Turner Entm't Co.,* 922 F.Supp. 926, 934 (S.D.N.Y. 1996).

### III. Promissory Estoppel Claim

"A cause of action for promissory estoppel under New York law requires the plaintiff to

prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable

reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v.*

*Grossman,* 202 F.3d 611, 615 (2d Cir. 2000) (Sotomayor, J.).

Defendants argue that the promissory estoppel claim must be dismissed because

Defendants never made a clear promise to abide by the USTA's policies.  Defendants argue that

the statements they made to the USTA merely reveal that Defendants were "willing to film only

where and what your organization will allow," (Comp. ¶ 22) and that, during negotiations,

Defendants would need to seek a license for footage of "Venus and Serena playing their matches

with on court sound."  (Compl. at ¶ 24.)  According to Defendants, Plaintiff misconstrues such

statements in order to allege an "understanding" that Defendants would license "all US Open

footage used in the Film" and "otherwise comply with the USTA's policies" (including broadcast "blackout limitations" and "editorial guidelines"). (Compl. ¶¶ 27, 31-32.) Defendants argue that nothing in the Complaint evidences or even alleges that Defendants knew of such policies or promised to abide by them. However, in paragraph 31 of the Complaint, Plaintiff alleges that it "advised Defendants that a necessary condition to any license agreement would be a restriction on the time period in which the Film could be aired on cable and on-demand television." Defendant further alleges the absence of any "clear and unambiguous promise" causes the claim to fail as a matter of law. *See, e.g.*, *Totalplan Corp. v. Colborne,* 14 F.3d 824, 833 (2d Cir. 1994) (no claim for promissory estoppel where "rights were proposed in draft agreements" but "no agreement was ever reached"); *DeSouza v. Andy Frain Services, Inc.*, 2012 WL 3245496, at *3 (S.D.N.Y. Aug. 6, 2012) (no clear and unambiguous promise where the defendant's offer was "tentative").

Plaintiff contends that it has alleged a number of specific promises made by Defendants upon which it relied in allowing Defendants access to the National Tennis Center. Plaintiff has alleged plausibly that Defendants made a clear and unambiguous promise: (1) that, at the beginning of the parties' discussions, Defendants stated they were "willing to film only where and what your organization will allow" (Compl. ¶ 22); and that (2) at some point during their negotiations before the 2011 US Open began, Defendants thought they would need to seek a license for footage of "Venus and Serena playing their matches with on court sound (*which we understand we will have to license*)." (*Id*. at ¶ 24) (emphasis in original).

The complaint asserts that the USTA was injured as a result of its reasonable and foreseeable reliance upon Defendants' promises. USTA granted Defendants access to record footage of the 2011 US Open, which footage Defendants included in the Film, without paying

any license fee or other compensation to the USTA. (*See* Compl. at ¶ 57.) As a result, plaintiff's promissory estoppel claim cannot be dismissed at the pleading stage.

In conclusion, Defendants' motion to dismiss the unjust enrichment claim is granted while their motion to dismiss the promissory estoppel claim is denied. The Clerk of Court is direct to close Docket No. 18.

Dated: November __06__, 2013
      White Plains, New York

SO ORDERED:

11/06/13

NELSON S. ROMÁN
United States District Judge